IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SANDRA JACKSON,                  §
                                 §
        Plaintiff,               §
                                 §
v.                               §      CIVIL ACTION NO. H-18-1281
                                 §
MEGAN J. BRENNAN, POSTMASTER     §
GENERAL, UNITED STATES           §
POSTAL SERVICE                   §
                                 §
        Defendant.               §

## <u>MEMORANDUM OPINION</u>

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 19). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion.

## I.  Case Background

Plaintiff filed this lawsuit alleging violations of the Americans with Disabilities Act ("ADA"),[2] the Rehabilitation Act,[3] the Age Discrimination in Employment Act ("ADEA"),[4] Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981").

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. <u>See</u> Doc. 13, Ord. Dated Sept. 7, 2018.

[2]    42 U.S.C. § 12101 et seq.

[3]    42 U.S.C. § 701 et seq.

[4]    29 U.S.C. §§ 621-634.

## A.  Factual Background

Plaintiff is a Hispanic female who was born in 1960.[5] Plaintiff began working for the United States Postal Service ("USPS") in 1985 as a City Carrier.[6]

### 1.  City Carrier Position

City Carriers are responsible for delivering and collecting mail along prescribed routes.[7]  The delivery component of the City Carrier position involves two essential functions - casing mail and delivering mail.[8]  Casing mail is the process of manually sorting various pieces of mail into a case in the order of delivery along a prescribed route.[9]  Delivering mail involves removing the mail from a case and preparing it for efficient delivery, then actually delivering the mail along a prescribed route.[10]  Collecting mail simply involves picking up mail along the prescribed route.[11]

A City Carrier can be assigned to a mounted or unmounted route.[12]  A mounted route is where delivery is made via a postal

---

[5]  See Doc. 19-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Dep. Tr. p. 16.

[6]  See Doc. 19-4, Ex. D to Def.'s Mot. for Summ. J., Aff. of Fern McBride ¶ 14.

[7]  See id. ¶ 3.

[8]  See id. ¶ 4.

[9]  See id.

[10]  See id.

[11]  See id. ¶ 5.

[12]  See id. ¶ 6.

vehicle and an unmounted route is where delivery is made by foot.[13]

Regardless of which type of route is assigned, a City Carrier must be able to: (1) lift up to thirty-five pounds, intermittently, for up to eight hours per day; and (2) kneel, bend, twist, stoop, pull, and grasp for up to eight hours per day.[14] City Carriers assigned to mounted routes must be capable of: (1) "driving a vehicle for approximately six hours, more or less, per workday;" (2) "standing, intermittently, for up to two hours per workday;" and (3) "walking, intermittently, for up to two hours per workday."[15] City Carriers assigned to unmounted routes must be capable of: (1) "standing, intermittently, for up to eight hours per workday;" and (2) walking, intermittently, for up to eight hours per day."[16]

**2.    Limited Duty Assignments**

The USPS provides limited duty assignments to employees who are injured while on duty.[17] Limited duty assignments "generally consist of tasks that are not being performed by another employee, but that, at the same time, are within the injured employee's medical restrictions."[18] The USPS's duty to provide limited duty

---

[13]    See id.

[14]    See id. ¶ 7.

[15]    See id. ¶ 8.

[16]    See id. ¶ 9.

[17]    See Doc. 19-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Maranda McCoy ¶ 8.

[18]    See id.

assignments arises from its Employee and Labor Relations Manual.[19]

### 3. Plaintiff's Employment

Upon beginning her employment for the USPS as a City Carrier, Plaintiff drove a postal vehicle to her routes and then delivered mail on foot.[20] Plaintiff originally worked at the Harwin station.[21] After two years, Plaintiff became a permanent employee, gained full employment benefits, and started working at the Annison Jones Station.[22] Eventually, due to dogs on her route, Plaintiff moved to the Astrodome Station, where she continued to work as a City Carrier, and collected, cased, and delivered mail.[23]

### 4. Plaintiff's Injuries

In 1989, Plaintiff's back "popped" while she was casing mail at the Astrodome Station.[24] As a result of her injury, Plaintiff missed six months of work and was permanently prohibited from carrying, collecting, or delivering mail, or driving a postal vehicle.[25] The USPS gave Plaintiff a limited duty assignment that consisted of performing administrative and customer-service related

---

[19] See id.

[20] See Doc. 19-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Dep. Tr. p. 22.

[21] See id. p. 20.

[22] See id. pp. 27-31.

[23] See id. pp. 32-35.

[24] See id. pp. 65-71.

[25] See id.

tasks at the Astrodome Station.[26]

In 2014, Plaintiff slipped and fell on her hip while leaving the Astrodome Station.[27]  As a result, Plaintiff was unable to do repetitive work, drive a postal vehicle, or lift over ten pounds.[28] The USPS provided Plaintiff a conforming limited duty assignment.[29]

### 5.    Conversation with McCoy

On March 28, 2017, Plaintiff was called into the office of Ms. Maranda McCoy ("McCoy"), the acting manager at the time, for a meeting.[30]  Plaintiff claims that during the conversation, McCoy told Plaintiff that she was tired of the other employees complaining about Plaintiff's limited capabilities.[31]  According to Plaintiff, an employee named Gloria later admitted that she was the person who complained and apologized to Plaintiff.[32]

### 6.    The Melcher Station

Subsequent to the March 28, 2017 meeting, Plaintiff was asked to train a worker at the Melcher Station.[33]  However, when Plaintiff arrived at the Melcher Station, she found that the station did not

---

[26]    See id.

[27]    See id. pp. 47-49.

[28]    See id. pp. 56-57.

[29]    See id.

[30]    See id. p. 82.

[31]    See id. p. 83.

[32]    See id. pp. 87-88.

[33]    See id. p. 105.

have the machine necessary for the training, and the worker Plaintiff was supposed to train was not there.[34]  Plaintiff returned to the Astrodome Station.[35]

Plaintiff was sent to the Melcher Station a second time to train a worker, but, again, the trainee was not present.[36]  On this second visit, Plaintiff was asked to help a customer at the "dutch door," but Plaintiff refused and stated that she was at the Melcher Station to train someone, not for the "dutch door," and that she could answer the "dutch door" at the Astrodome Station.[37]  The area manager, Ms. Courtney McKelvey ("McKelvey"), later asked Plaintiff if there was a problem and told Plaintiff that she should be thankful to have a job.[38]

### 7.    USPS Station Budgets

Nationally, the USPS is divided into management areas.[39]  "The Southern Area of the [USPS] contains the State of Texas[,]" which is divided up into multiple individual districts.[40]  One of these districts is the Houston District, which contains the Astrodome

---

[34]    See id.

[35]    See id.

[36]    See id. pp. 105-106.

[37]    See id. p. 106.

[38]    See id. p. 107.

[39]    See Doc. 19-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of McCoy ¶ 3.

[40]    Id.

Station.[41]  "The Finance Department of the Houston District provides each reporting office with a weekly budget."[42]  Within each station, there are multiple functional components, which are each budgeted a certain number of work hours per week.[43]  The City Delivery function is one of these functional components.[44]  Work performed by City Carriers counts toward the City Delivery function's budgeted hours.[45]

### 8.   Employee Transfers

In April 2017, there were two City Carriers working limited duty assignments at the Astrodome Station, Plaintiff and Stacy Carter ("Carter").[46]  Although Plaintiff was unable to deliver mail and Carter was limited in his ability to deliver mail, their hours worked counted towards the City Delivery function's budgeted hours for the Astrodome Station.[47]  Other employees had to absorb the work that Plaintiff and Carter were unable to complete.[48]  As a result, the Astrodome Station exceeded its number of budgeted hours for the

---

[41]    Id.

[42]    Id. ¶ 4.

[43]    Id. ¶¶ 5-6.

[44]    Id. ¶ 6.

[45]    Id.

[46]    Id. ¶ 7.

[47]    Id. ¶ 9.

[48]    Id.

City Delivery function in April 2017.[49]

Also in April 2017, the Melcher Station needed an employee for administrative tasks and was below its budgeted hours for administrative tasks. Accordingly, Plaintiff was given a limited duty assignment at the Melcher Station to perform administrative duties.[50] At the same time, the Houston District Safety Department needed an employee to fill a Driving Instructor position and was under its budgeted hours for that functional component.[51] Carter's medical restrictions did not prevent him from working as a Driving Instructor.[52] Accordingly, Carter was given a limited duty assignment as a Driving Instructor at the Houston District Safety Department.[53] These assignments allowed all three offices to complete necessary tasks while remaining within their budgeted hours.[54]

On April 22, 2017, Plaintiff began working her limited duty assignment at the Melcher Station.[55] Plaintiff's official duty station remained at the Astrodome Station while she temporarily

---

[49]   Id. ¶ 10.

[50]   Id. ¶ 11.

[51]   Id. ¶ 12.

[52]   Id.

[53]   Id.

[54]   Id.

[55]   See Doc. 19-4, Ex. D to Def.'s Mot. for Summ. J., Aff. of Fern McBride ¶ 14.

worked at the Melcher Station.[56]  Plaintiff did not lose her seniority when she worked at the Melcher Station.[57]  On October 25, 2017, Plaintiff was transferred back to her previous limited duty assignment at the Astrodome Station.[58]

## B.   **Procedural Background**

Plaintiff filed a formal equal employment opportunity ("EEO") complaint on July 12, 2017.[59]  On January 25, 2018, pursuant to Equal Employment Opportunity Commission regulations, the USPS issued a final agency decision finding that Plaintiff was not discriminated against.[60]  Plaintiff filed her original complaint on April 24, 2018.[61]  On May 30, 2019, Defendant filed its pending motion for summary judgment.[62]  On June 20, 2019, Plaintiff filed a response to Defendant's motion for summary judgment.[63]  On June 27, 2019, Defendant filed a reply in support of its motion for summary judgment.[64]

---

[56]   Id. ¶ 15.

[57]   Id.

[58]   Id. ¶ 14.

[59]   See Doc. 19-2, Ex. B to Def.'s Mot. for Summ. J., Final Agency Decision p. 1.

[60]   See id. p. 19.

[61]   See Doc. 1, Pl.'s Orig. Compl.

[62]   See Doc. 19, Def.'s Mot. for Summ. J.

[63]   See Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J.

[64]   See Doc. 21, Def.'s Reply in Support of Mot. for Summ. J.

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Coastal Agricultural Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. See id. at 505 (quoting Celotex Corp., 477 U.S. at 323). If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. See id. The court must accept all of the nonmovant's evidence as true and draw all justifiable

inferences in her favor. Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 505 (5th Cir. 2014)(quoting Anderson, 477 U.S. at 255).

## III. Analysis

Plaintiff pled the following causes of action against Defendant: (1) disability discrimination in violation of the ADA and Rehabilitation Act; (2) failure to accommodate in violation of the ADA and Rehabilitation Act; (3) retaliation in violation of the Rehabilitation Act and the ADA; (4) age discrimination in violation of the ADEA; (5) retaliation in violation of the ADEA; (6) Title VII race discrimination; (7) Title VII retaliation; (8) Section 1981 race discrimination; and (9) Section 1981 retaliation. Defendant argues that summary judgment is appropriate as to all of Plaintiff's claims.

### A. **Preliminary Issues**

The lackluster briefing of Plaintiff and Defendant's incomplete arguments necessitates consideration of multiple preliminary issues before delving into the parties' briefing.

#### 1. **Exclusive Remedies**

Plaintiff brought multiple claims that are not available to her. Firstly, "Title VII is the exclusive judicial remedy for claims of [racial] discrimination in federal employment." Rowe v. Sullivan, 967 F.2d 186, 189 (5th Cir. 1992)(internal quotation marks omitted)(citing Watkins v. Lujan, 922 F.2d 261, 263 (5th Cir.

1991)).  Secondly, the Rehabilitation Act is the exclusive remedy for federal employees claiming disability discrimination.  See Flynn v. Distinctive Home Care, Inc., 812 F.3d 422, 425-26 (5ᵗʰ Cir. 2016); Pinkerton v. Spellings, 529 F.3d 513, 515 (5ᵗʰ Cir. 2008).[65] Accordingly, Plaintiff's Section 1981 and ADA claims are improper.

## 2.  **Adverse Employment Action**

The court doubts Plaintiff's ability to show that she suffered an adverse employment action as required by her race and age discrimination claims.[66]  In the Fifth Circuit, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  McCoy v. City of Shreveport, 492 F.3d 551, 559 (5ᵗʰ Cir. 2007).

In her pleadings, Plaintiff does not specifically state what she believes constituted an adverse employment action.  From Plaintiff's pleadings the court gleans that Plaintiff believes her transfer to the Melcher Station and the statements made by McCoy and McKelvey were adverse employment actions.

Criticism, oral threats, abusive remarks, and false accusations do not constitute adverse employment actions.  See

---

[65]    Although the Rehabilitation Act is Plaintiff's exclusive remedy for her allegations of disability discrimination, the Rehabilitation Act incorporates the substantive provisions of the ADA.  See 29 U.S.C. § 794(d).

[66]    Plaintiff's retaliation claims also require her to show that she suffered an adverse employment action.  However, the standard is different than the one articulated here.  See, infra, p. 23.

<u>Breaux v. City of Garland</u>, 205 F.3d 150, 158 (5th Cir. 2000). McCoy expressed frustration over fielding complaints about Plaintiff's limited capabilities and McKelvey told Plaintiff she was lucky to have a job. At worst, these statements could be characterized as oral threats or abusive remarks. Accordingly, the statements made by McCoy and McKelvey are not adverse employment actions.

Regarding Plaintiff's transfer, "an employment transfer may qualify as an adverse employment action if the change makes the job objectively worse." <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 283 (5th Cir. 2004)(internal quotation marks omitted)(quoting <u>Hunt v. Rapides Healthcare Sys. LLC</u>, 277 F.3d 757, 770 (5th Cir. 2001)). A plaintiff's subjective preference alone is insufficient to show an adverse employment action. <u>See</u> <u>id.</u> Plaintiff claims that her transfer to the Melcher Station required her to perform work that was prohibited by her medical restrictions.[67] Plaintiff does not support this allegation with citation to any evidence.[68] Further, Plaintiff was transferred back to her subjectively preferable location approximately six months after her transfer to the Melcher Station.

The court questions whether Plaintiff suffered an adverse employment action. Nonetheless, as Defendant failed to make this argument and Plaintiff has not briefed the issue, the court will

---

[67]     <u>See</u> Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 7-8.

[68]     <u>See</u> <u>id.</u>

13

proceed to the issues actually addressed by the parties.  The court will focus its analysis on Plaintiff's transfer because that is the only employment action that could possibly constitute an adverse employment action.

### 3.    __Federal Rule of Civil Procedure ("Rule") 56__

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "The court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."  RSR Corp. v. Int'l Ins. Co., 612 F.3d 851, 857 (5th Cir. 2010)(internal citations omitted) (citing Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998)).  Under Rule 56(e):

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> >
> > (2) consider the fact undisputed for purposes of the motion;
> >
> > (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

In her response to Defendant's motion for summary judgment Plaintiff has hardly attempted to comply with Rule 56. A glaring issue is Plaintiff's "Facts" section, which spans five pages and includes only one citation to evidence.[69] This is not a motion to dismiss. When faced with a motion for summary judgment, Plaintiff must support her allegations with evidence. The court will not consider the unsupported allegations found in Plaintiff's brief.

Additionally, throughout her response, Plaintiff has attempted to rebut many of Defendant's factual assertions without citation to evidence. For example, to rebut Defendant's articulated legitimate, nondiscriminatory reason for Plaintiff's transfer, Plaintiff merely recites two pages of legal standards and then states that "[a] wealth of circumstantial evidence exists that Plaintiff's transfer was motivated by Plaintiff's disability and race and the result of a discriminatory overall scheme."[70] This is insufficient under Rule 56, and, as discussed more throughly below, is fatal to Plaintiff's claims.

Plaintiff's briefing is so insufficient that the court believes it would be futile to give Plaintiff another opportunity to support her allegations. Accordingly, where Plaintiff has failed to properly address Defendant's assertions of fact, the

---

[69] See Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 5-9.

[70] Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 17.

court will consider the fact undisputed, and, if appropriate, grant summary judgment. See Fed. R. Civ. P. 56(c)(2)-(3).

### 4. "Ebone's" Letter

Finally, Plaintiff attached only two pieces of evidence to her response to Defendant's motion for Summary Judgment. One of those pieces of evidence is purportedly the handwritten letter of Plaintiff's coworker, "Ebone."[71] The letter has not been authenticated and it is not even clear who wrote it because the court assumes "Ebone" is a nickname. The letter is also hearsay and Plaintiff had not demonstrated how it falls within an exception. Unsworn documents and inadmissible hearsay are not appropriate for the court's consideration on summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Goodwin v. Johnson, 132 F.3d 162, 186 (5th Cir. 1997).

Even if the court accepted the letter as competent evidence, the only contents that would be admissible at trial are "Ebone's" personal observations. The only personal observations contained in the letter are that: (1) Plaintiff was good at her job; (2) an unnamed employee who had remained at the Astrodome Station after Plaintiff's transfer was doing poorly at her job; and (3) "Ebone" missed Plaintiff and wished she had not been transferred.[72] These observations do not pertain to a relevant issue. For these

---

[71]    See Doc. 20-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Coworker Letter.

[72]    See id.

reasons, the court will not consider "Ebone's" letter.

## B.     Plaintiff's Claims

Having discussed the preliminary issues, the court will now turn to Plaintiff's claims.

In the absence of direct evidence, as is the case here, courts analyze discrimination and retaliation claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) [hereinafter McDonnell Douglas], and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004). Under this "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. Rachid, 376 F.3d at 312.

After a plaintiff has established a prima-facie case, the burden shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions. Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir. 2017). If the defendant satisfies this burden, "the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." Id. At the summary judgment stage, the plaintiff must produce some evidence "demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). In certain circumstances, evidence that an employer's proffered reason is false may be enough

to raise a fact issue on pretext if the jury could infer from the falsity of the explanation that discrimination was the real reason. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000); Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 (Tex. 2003)(stating that, even if the proffered reason is false, the plaintiff's evidence must indicate that discrimination was the real reason).

### 1. Title VII Racial Discrimination

A prima facie case of race discrimination requires the plaintiff to show that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone who is not a member of the protected classes to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different race. See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001). In the Fifth Circuit, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." McCoy, 492 F.3d at 559. The court also notes that proof of disparate treatment can establish the fourth element of a plaintiff's prima facie case. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005); Okoye, 245 F.3d at 513. "To raise an inference of discrimination, the plaintiff may compare h[er] treatment to that of nearly identical, similarly situated

18

individuals." Bryant, 413 F.3d at 478.

Although the court questions Plaintiff's ability to show the third element of her prima facie case, Defendant has only challenged the fourth element, that she was replaced by a person who was not a member of a protected class or was treated less favorably than a similarly situated person. Plaintiff offers Amanda Long ("Long") as a similarly situated employee who was treated more favorably than Plaintiff due to their different races.[73] Long is an African-American female who began working for the USPS on February 15, 2016.[74] Long injured her back after fainting while working for the USPS.[75] As a result of the injury, Long began a limited duty assignment as a modified City Carrier that fell within her medical restrictions.[76] In January 2017, while Long was assigned to the Astrodome Station, "parcels were discovered in her vehicle after her workday was completed, and she was thereafter placed in a non-duty, non-pay status until June 2017."[77] Long was eventually transferred to the Jensen Drive Station because she was causing the Astrodome Station to exceed its budgeted hours and the Jensen Drive station had a need for help

---

[73]    See Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. pp. 10-12.

[74]    See Doc. 19-4, Ex. D to Def.'s Mot. for Summ. J., Aff. of Fern McBride ¶ 12.

[75]    Id.

[76]    Id.

[77]    Id.

with window services, which was work within Long's medical restrictions.[78]

Plaintiff argues that the USPS's treatment of Long establishes her prima facie case because Long was a different race from Plaintiff and was not transferred to the Melcher Station as Plaintiff was. However, Long was transferred to the Jensen Drive Station for the same reasons that Plaintiff was transferred to the Melcher Station. Additionally, Long was suspended without pay for approximately six months. If anything, Long was treated less favorably than Plaintiff. The court find that Plaintiff has failed to provide evidence of a more favorably treated employee who was similarly situated and of a different race.

Additionally, even if Plaintiff had shown a prima facie case, Defendant has provided a legitimate, nondiscriminatory staffing and budgetary reason for Plaintiff's transfer. See, e.g., Johnson v. Brennan, CV 4:16-02612, 2017 WL 5672692, at *5 (S.D. Tex. Nov. 27, 2017)(holding that the USPS's staffing needs was a legitimate, nondiscriminatory reason for its employment actions). As discussed above, Plaintiff merely summarily posits that the evidence in the record shows that Defendant's proffered reason is pretext for discrimination without citation to any record evidence.[79] The court finds that Plaintiff has not raised a fact issue concerning

---

[78]    Id.

[79]    Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 17.

Defendant's legitimate, nondiscriminatory reason for Plaintiff's transfer.

## 2. ADEA Age Discrimination

The first three elements of a prima facie case for age discrimination under the ADEA are identical to the first three elements for a race discrimination claim. See Leal v. McHugh, 731 F.3d 405, 410 (5th Cir. 2013)(quoting Smith v. City of Jackson, Miss., 351 F.3d 183, 196 (5th Cir. 2003)). For the fourth element, the plaintiff must show that she was replaced by someone younger or treated less favorably than similarly situated employees. See id.

Again, Defendant only challenges Plaintiff's ability to show that she was treated less favorably than a similarly situated employee who was younger than her. To establish her prima facie case, Plaintiff proffers the following testimony from her deposition: "We just had a – young lady lose her son . . . [w]hen she came back, everybody was happy to see her in management. When I lost my mother and I lost my brother two months later, I came back to work, I didn't get that. I didn't get that at all."[80] Plaintiff argues that this testimony establishes that Defendant had a clear preference for younger employees.

Plaintiff's testimony does not establish that the referenced employee was similarly situated to Plaintiff, and, regardless, management's perceived "happy" reception of a younger employee

---

[80]    See Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 13.

returning after the death of her son does not rise to the level of age discrimination. Accordingly, Plaintiff has failed to show a prima facie case of age discrimination. Even if the court were to assume that Plaintiff could show a prima facie case, as discussed above, she has wholly failed to rebut Defendant's legitimate, nondiscriminatory reason for Plaintiff's transfer.

### 3. Rehabilitation Act Disability Discrimination

Under the Rehabilitation Act, to establish a prima facie case of disability discrimination, "a plaintiff must prove (1) [s]he is an individual with a disability; (2) who is otherwise qualified for the position sought; (3) who worked for a program or activity receiving Federal financial assistance; and (4) that [s]he was discriminated against solely by reason of her or his disability." Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007)(internal quotation marks and alterations omitted)(quoting Hileman v. City of Dallas, Tex., 115 F.3d 352, 352 (5th Cir. 1997)). To show discrimination on the basis of a failure-to-accommodate, a plaintiff must show that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013)(citing Griffin v. UPS, 661 F.3d 216, 222 (5th Cir. 2011)).

Plaintiff has provided no evidence that she was transferred solely because of her disability.  Plaintiff cites to her testimony that other limited duty employees at the Astrodome Station were not transferred to the Melcher Station.  However, this testimony actually supports Defendant's proffered reason for the transfer because it shows that Defendant did not transfer all individuals with disabilities.

Regarding her failure-to-accommodate claim, Plaintiff actually admits in her briefing that her modified carrier position is a reasonable accommodation for her injuries.[81]  Regardless, Defendant has provided unrebutted evidence that Plaintiff's limited duty assignments allowed her to continue working while complying with her medical restrictions.[82]  The court finds that Plaintiff's limited duty assignments were reasonable accommodations for her limited capabilities.

Finally, as discussed above, even if the court spotted Plaintiff her prima facie case, Plaintiff has not rebutted Defendant's proffered legitimate, nondiscriminatory reason for her transfer.

### 4.  Retaliation

"To establish a prima facie retaliation case [under the ADEA,

---

[81]    See Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 15.

[82]    See Doc. 19-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Dep. Tr. p. 56-57, 65-71; Doc. 19-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of McCoy ¶ 11.

the Rehabilitation Act, or Title VII,] a plaintiff must show that
'1) [s]he engaged in protected activity; (2) [s]he suffered an
adverse employment decision; and (3) a causal link exists between
the protected activity and the adverse employment decision.'"
Goudeau v. Nat'l Oilwell Varco, L.P., 793 F.3d 470, 478 (5th Cir.
2015)(quoting Medina v. Ramsey Steel Co., 238 F.3d 674, 684 (5th
Cir.2001)); Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484
(5th Cir. 2008); Shannon v. Henderson, 275 F.3d 42 (5th Cir. 2001).
As discussed above, the court questions whether Plaintiff suffered
an adverse employment decision. Regardless, Defendant did not make
that argument so the court will address the issues actually raised.

Defendant argues that Plaintiff did not engage in any
protected activity prior to her alleged adverse employment action.
Thus, she has failed to make a prima facie case of retaliation.

"Protected activities consist of (1) opposing a discriminatory
practice; (2) making or filing a charge; (3) filing a complaint; or
(4) testifying, assisting, or participating in any manner in an
investigation, proceeding, or hearing." Rodriquez v. Wal-Mart
Stores, Inc., 540 F. App'x 322, 328 (5th Cir.
2013)(unpublished)(internal quotation marks omitted)(citing Dias v.
Goodman Mfg. Co., 214 S.W.3d 672, 676 (Tex. App.—Houston [14th
dist.] 2007, pet. denied)). "Complaining about unfair treatment
without specifying why the treatment is unfair, however, is not a
protected activity." Tratree v. BP N. Am. Pipelines, Inc., 277 F.

App'x 390, 395 (5th Cir. 2008)(unpublished)(citing <u>Harris-Childs v.</u> <u>Medco Health Solutions</u>, 169 F. App'x 913 (5th Cir. 2006)).

Plaintiff did not respond to Defendant's argument and has not identified any evidence showing that she engaged in a protected activity prior to this lawsuit. The court has similarly been unable to identify any evidence that Plaintiff engaged in a protected activity. In fact, Plaintiff testified that she never complained about discrimination prior to this lawsuit and had never previously filed an EEO complaint.[83]

Finally, even if the court assumed Plaintiff could make a prima facie case of retaliation, Plaintiff has not rebutted Defendant's legitimate, nondiscriminatory reason for Plaintiff's transfer.

For these reasons, summary judgment is appropriate on Plaintiff's retaliation claims.

### IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion for Summary Judgment as to all of Plaintiff's claims.

**SIGNED** in Houston, Texas, this 13th day of November, 2019.

_____
Nancy K. Johnson
United States Magistrate Judge

---

[83]    <u>See</u> Doc. 19-3, Ex. C to Def.'s Mot. for Summ. J., Pl.'s Dep. Tr. pp. 37, 45-46.